# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| CALLEN CONSTRUCTION, LLC,<br><br>    Plaintiff / Counterclaim Defendant,<br><br>    v.<br><br>ROBERT and MICHELLE MATSUK,<br><br>    Defendants / Counterclaim Plaintiffs / Third-Party Plaintiffs,<br><br>    v.<br><br>LEWIS M. KORNHAUSER, ESQ.,<br><br>    Third-Party Defendant. | Civil No. 15-6056 (RMB/JS)<br><br>**OPINION** |

APPEARANCES:

REGER RIZZO DARNALL LLP
By: John M. Cinti, Esq.
700 East Gate Drive, Suite 101
Mount Laurel, New Jersey 08054
    Counsel for Callen Construction, LLC

GOROKHOVICH INSURANCE & COMMERCIAL LITIGATION LLC
By: Michael A. Gorokhovich, Esq.
309 Fellowship Road, Suite 200
Mount Laurel, New Jersey 08054
    Counsel for Robert and Michele Matsuk

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
By: John L. Slimm, Esq.
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey 08002
    Counsel for Lewis M. Kornhauser, Esq.

**BUMB**, UNITED STATES DISTRICT JUDGE:

In September, 2005, a fire completely destroyed the building which housed Defendants Robert and Michelle Matsuk's ("the Matsuks") condominium unit. In May 2007, while litigation related to the fire was pending, the Matsuks sold what was left of their unit, a condominium "shell," to Plaintiff Callen Construction, LLC. The parties' "Contract for Sale" contains a paragraph entitled "Insurance Claims, Causes of Action and Pending Lawsuits." It is that paragraph that is the center of the parties' dispute in this matter. Presently before the Court are the cross-motions for summary judgment primarily concerning the purpose, meaning and validity of that paragraph. The Matsuks also move for summary judgment on all other claims.

For the reasons stated herein, the cross-motions will be denied without prejudice, and the Matsuk's Motion for Summary Judgment on all other claims will be granted.[1]

I.  **FACTUAL BACKGROUND**

For the purpose of the motions, the parties have jointly stipulated to the following facts.[2]

---

[1] The Court exercises diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

[2] Discovery in this case has not commenced. By scheduling order dated June 7, 2017, Magistrate Judge Schneider stayed all

The Fire

At all relevant times prior to the sale at issue, the Matsuks owned townhome unit 1903 at the Crown Key Yacht Club Condominium Association in Ventnor, New Jersey. (Stipulated Facts, "SF", ¶ 1) On September 16, 2005, a large fire occurred at the Crown Key complex. (SF ¶ 5) Several multi-unit buildings were completely destroyed or significantly damaged, along with the personal property within those buildings. (SF ¶ 7, 8, 11) The fire originated from a Mercedes vehicle parked in a carport within the 1900 building. (SF ¶ 6) The Matsuk's townhome, located in the 1900 building, was completely destroyed, leaving only a "shell" of a unit. (SF ¶ 10, 11)

The First Lawsuit

By April, 2006, it appeared that extensive litigation would result (see generally SF ¶¶ 22-26); and indeed, on August 2, 2006, the Condominium Association filed the first of three lawsuits related to the fire, first suing its insurance broker for a substantial insurance coverage shortfall. (SF ¶ 27, 30, Joint Ex. D-- First Complaint)

The Sale of the Matsuks' Unit to Callen

In the fall of 2006, and after the filing of the Condominium Association's lawsuit against its insurance carrier,

---

proceedings pending the undersigned's decision on the motions for summary judgment based on stipulated facts. [Dkt # 48]

the Condominium Association "hired [Callen] to be the Association's contractor to reconstruct the destroyed common elements." (SF ¶ 33)

Sometime thereafter, Callen and the Matsuks "entered into negotiations to sell the Matsuk's unit" to Callen. (SF ¶ 44) They discussed certain terms, such as the purchase price, and "a possible mortgage to be held by the [Matsuks]." (SF ¶ 45) "[A] contract of sale was prepared." (SF ¶ 47) The parties' Joint Stipulation of Facts states that the Matsuks' attorney, Third-Party Defendant Lewis Kornhauser, Esq., had some involvement in drafting the contract, however the parties' joint stipulation does not indicate who else was involved in drafting the contract. (SF ¶ 47) The contract was signed by the Matsuks on May 9, 2007, and signed by Callen on May 15, 2007. (SF ¶ 49) Notably, at that time, the only pending litigation arising out of the fire was the first of three lawsuits that would eventually ensue, the above-mentioned Association's suit against its insurance broker. The relevant portion of the Contract of Sale provides,

> 32. INSURANCE CLAIMS, CAUSES OF ACTION AND PENDING LAWSUITS
>
> The parties agree and acknowledge that there are certain insurance claims, causes of action and pending lawsuits against insurance companies, brokers, automobile companies and possibly individuals. This agreement of sale, upon completion and transfer from the [Matsuks] to [Callen] shall act as an assignment

> of any and all interests regarding those claims and
> [Callen] shall be in the position that the [Matsuks]
> w[ere] in at the time of the closing, with the
> following exception:
>
> Any recovery made on account of any action by
> the Condominium Association, individuals or
> otherwise, shall be paid to [Callen] but the first
> $20,378.00 recovered shall be reimbursed to the
> [Matsuks] as repayment for monies expended as a result
> of the fire and includes but is not limited to payment
> to contractors, estimates and assessments and
> otherwise. These amounts are reflected in a November
> 27, 2006 letter from John A. Zohlman, III, Esq.
>
> 33. ASSESSMENTS
>
> [The Matsuks] represents that [they] ha[ve] paid
> certain amounts that have been assessed by the
> Condominium Association as a result of the fire and
> normal business operations of the Condominium
> Association. The $20,378.00 referred to in paragraph
> 32 partially represents any assessments paid prior to
> April 1, 2007. An additional assessment came due
> April 1, 2007 in the amount of $13,585.00 and [the
> Matsuks] shall pay that at closing from the proceeds
> and shall seek no reimbursement from [Callen] for that
> payment.

(Joint Ex. G)

The parties jointly stipulate that they "never discussed the meaning or intent of paragraph 32 of the Contract," and "[t]he only communication between the parties regarding the assignment was in the agreement of sale." (SF ¶ 48, 70)

John Zohlman, III was the Association's lawyer. (SF ¶ 13) The "November 27, 2006 letter" referenced in the contract is a letter Mr. Zohlman, on behalf of the Association, sent to each unit owner setting forth a "personal payment schedule relative

5

to the special assessment," imposed by the Association to make-up for the insurance coverage shortfall (which was being challenged in the first lawsuit). (SF ¶ 31, 35-36) The Matsuks were assessed a total of $33,963.00, to be paid in four equal installments on December 15, 2006; January 15, 2007; February 15, 2007; and April 1, 2007. (SF ¶ 35-36)

In a subsequent letter dated January 3, 2007, Mr. Zohlman, on behalf of the Association, advised unit owners that if the Association obtained a judgment or settlement in the pending suit against the Association's insurance broker, the owners' personal assessments "may" be "reduced" or "reimbursed" by the Association, but that such decision would be made by the Association Board "in place at the time monies are received." (SF ¶ 38-40)

The Second Lawsuit

Sometime "[a]fter the sale [of the Matsuk's unit to Callen] had been completed . . . , the Matsuks sought advice of personal counsel regarding recovery of their personal losses and retained counsel to pursue their personal claims." (SF ¶ 50) "On September 17, 2007, the Matsuks and several other unit owners filed [the second] complaint [arising from the fire against the owners of the Mercedes car, Mercedes, the car dealership that sold the Mercedes, the company that serviced the Mercedes, the company that installed or maintained the building sprinkler

system, the Condominium Association's insurance broker, the Condominium Association's property manager, the Condominium Association's lawyer, and the Matsuks' own insurance company] in which each represented unit owner sought recovery of their own personal losses."[3]  (SF ¶ 51)  The Matsuks' suit was eventually "consolidated with numerous other lawsuits pursued by the Association, [its insurer], various other affected unit owners, and various other subrogating carriers, collectively comprising what became known as the 'Crown Key Litigation.'"  (SF ¶ 56)  "The Crown Key Litigation was ultimately resolved in full by way of a global mediation and global settlement in 2013."  (SF ¶ 61)  "The claims asserted by the Matsuks in the Crown Key Litigation

---

[3] The specific claims asserted by the Matsuks in what became known as the Crown Key Litigation were: (1) negligence against the owners of the Mercedes car; (2) product liability claims against Mercedes; (3) strict liability claims against Mercedes; (4) negligence against the car dealership that sold the Mercedes; (5) negligence against the company that serviced the Mercedes; (6) negligence against the company that installed or maintained the sprinkler system at the Condominiums; (7) negligent failure to procure adequate insurance coverage against the Condominium Association's insurance broker; (8) negligent misrepresentation against the Condominium Association's insurance broker; (9) vicarious liability of the Condominium Association's insurance broker; (10) breach of contract by the Condominium Association's insurance broker; (11) negligence of the Condominium Association's property manager; (12) legal malpractice of the Condominium Association's lawyer; and (13) negligent failure to procure adequate insurance coverage against the Matsuks' homeowners' insurance company. [Joint Ex. H, I]  At least some of these claims were asserted by the Matsuks based on their status as third party beneficiaries of the insurance coverage obtained by the Condominium Association. [See, e.g. Joint Ex. I, ¶ 45]

were the only claims pursued by the Matsuks post-closing and the only source of the Matsuks' recovery post-closing." (SF ¶ 60) "The Matsuks have received no other recovery except the settlement in the Crown Key litigation." (SF ¶ 84) The Matsuks have not paid to Callen "any sum of money they received from the settlement of the Crown Key Litigation." (SF ¶ 85)

<u>The Third Lawsuit</u>

On December 7, 2007, various insurance companies as subrogees of the Condominium Association and various individuals-- but not the Matsuks-- filed a third complaint for losses arising out of the fire, this time suing "the owner of the Mercedes vehicle which started the fire; the sellers, servicers and manufacturer of that vehicle; as well as the fire sprinkler company which had inspected the fire sprinklers at the Association." (SF ¶ 42)

<u>The Instant Suit</u>

Callen has filed this suit asserting that, pursuant to ¶ 32 of the Contract of Sale, the Matsuks are obligated to pay Callen the undisclosed amount of money the Matsuks received from the settlement of the Crown Key Litigation. The Amended Complaint asserts the following claims: breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, violation of New Jersey's Consumer Fraud Act, common law fraud, and punitive damages.

8

The Matsuks have moved for summary judgment on all claims. Callen has cross-moved for summary judgment on the breach of contract claim only.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Here, the parties rely solely on stipulated facts. Therefore, the only question before the Court on these cross-motions for summary judgment is whether either side is entitled to judgment as a matter of law.

## III. ANALYSIS

The Court first addresses the breach of contract claim before turning to the other claims.

### A.

As to the contract claim, two issues are raised. First, the Matsuks assert that ¶ 32 assigns to Callen rights in only pending claims at the time of execution; whereas Callen asserts that ¶ 32 assigns to it rights to proceeds from pending suits at the time of execution as well as any contemplated suit.

Second, if the Court adopts the Matsuks' argument, the Matsuks assert the assignment is void under New Jersey law.

For the reasons set forth herein, the Court adopts Callen's proposed construction. Therefore, the Court does not reach the issue of whether an assignment of claims is void under New Jersey law.

The basic question is, what did the Matsuks assign to Callen? Paragraph 32 discloses the following. The parties' intent was to put Callen "in the position that the [Matsuks] w[ere] in at the time of closing" as to "any and all interests regarding" "insurance claims, causes of action, and pending lawsuits."

The Matsuks argue that "cause of action" is synonymous with "pending lawsuit." However, "cause of action" is a term of art with a defined meaning: "a group of operative facts giving rise to one or more bases for suing; a factual situation that entitled one person to obtain a remedy in court from another person; claim. [Example:] after the crash, Aronson had a cause of action." Black's Law Dictionary (10th Ed. 2014); see Restatement (Second) of Contracts § 202(3)(b)("technical terms and words of art are given their technical meaning when used in a transaction within their technical field."). Following the maxim of *noscitur a sociis*, "a word is known from its associates,"[4] a clear progression is apparent. One may have an

---

[4] See Bertrand v. Jones, 58 N.J. Super. 273, 283 (App. Div. 1959)("[w]ords of general and specific import take color from

10

insurance claim without having a cause of action, and one having a cause of action may not file a lawsuit.  On the other hand, a single event may eventually give rise to all three.

Thus, as reflected in ¶ 32's broad language, the Matsuks assigned to Callen more than just pending lawsuits; indeed, placing Callen "in the position of the Matsuks" must necessarily mean something other than assigning to Callen only pending lawsuits because the Matsuks had no pending lawsuits at the time of closing.

However, holding, as the Court does, that the Matsuks assigned to Callen causes of action (which may, or may not, ripen into pending lawsuits after closing) does not compel the conclusion, as the Matsuks argue, that the parties intended for Callen to actually file suit as assignee of the Matsuks and actively litigate what later became the Crown Key Litigation. Such a conclusion is entirely inconsistent with the stipulated facts before the Court.  Had the Matsuks meant for Callen to file suit against "insurance companies, brokers, automobile companies and possibly individuals," and actively litigate those claims, the Matsuks would not have filed, post-closing, the two complaints [Joint Exs H and I] that became the Crown Key

---

each other when associated together, and thus the word of general significance is modified by its associates of restricted sense.").

Litigation.  Likewise, Callen did not, post-closing, file any lawsuits purporting to pursue claims as assignees of the Matsuks.

Thus, even putting aside the plain language construction, the parties' course of performance after executing the contract indicates that both the Matsuks and Callen understood that Callen would not actively litigate claims "against insurance companies, brokers, automobile companies and possibly individuals," in order to be put "in the position that the [Matsuks] w[ere] in at the time of closing."  See Restatement (Second) of Contracts § 202(5) and comment g ("Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance. . . . The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.").  Accordingly, the Court rejects the Matsuks' proposed construction, and adopts Callen's proposed instruction.

Adopting Callen's proposed construction, however, does not necessarily result in the Court granting summary judgment to Callen, as Callen assumes.  Critical facts are missing from the limited stipulated record presently before the Court-- namely, which causes of action were settled in the Crown Key Litigation, and for which are there proceeds to which Callen may be

entitled.  The record contains the causes of action that were
<u>filed</u> by the Matsuks, but between filing of complaints and
ultimate settlement, a large chasm currently exists.  The
present record does not indicate whether the causes of action
that were assigned to Callen at closing in May, 2007 were the
same causes of action that the Matsuks settled in 2013.
Hypothetically, in mediation, the Matsuks could have proposed
adding causes of action that did not yet exist at closing-- for
example, a bad faith denial of insurance benefits claim-- and
while such a claim would never have been asserted in a formal
amended pleading, it nonetheless could have been a cause of
action that was included in the settlement.  If that were the
situation, Callen would not be entitled to summary judgment on
its breach of contract claim.

Moreover, even if the Court were to assume, which it does
not, that there is a one-to-one correspondence between the
claims asserted in the pleadings and the claims settled,
ambiguity still remains.  The Tenth Count of the Third Amended
Complaint [Joint Ex. I] appears to be a catch-all claim, the
nature of which is unclear.  Without an identification of the
claim, the Court cannot rule that it was a cause of action the
Matsuks had at the time of closing.

Further still, before ruling on the breach of contract
claim, the Court would require an assessment of what proceeds

went to which claims before it could undertake the analysis the parties urge this Court to conduct. That Callen has been denied the details of the settlement complicates matters, but does not mean that these issues can never be resolved. Thus, the cross-motions for summary judgment on the breach of contract claim will be denied without prejudice.

**B.**

As to the other claims, the Matsuks argue "Plaintiff's tort claims are nothing other than a mere restatement of the contractual claim[s]." [Moving Brief, Dkt. # 51-1, p. 21] Callen makes no argument in response; indeed, its brief in opposition to the Matsuks' Motion for Summary Judgment completely ignores the other claims, as if they are not at issue. Accordingly, the Court deems the other claims conceded. See Shaw v. Burlington Cty. Corr., No. 1:11-CV-07056 RMB/JS, 2013 WL 3949021, at *6 (D.N.J. Aug. 1, 2013) ("Plaintiff's failure to respond to the defendant's arguments on summary judgment constitutes an abandonment of [such] causes of action and essentially acts as a waiver of these issues.").

Accordingly, the Matsuk's Motion for Summary Judgment will be granted as to all claims except the breach of contract claim.[5]

---

5  If Callen believes the Court has operated under a fundamental misunderstanding of Callen's silence, and Callen wishes to further pursue the other claims, it may file an appropriate motion pursuant to L. Civ. R. 7.1(i).

14

**IV. CONCLUSION**

For the foregoing reasons, the parties' cross-motions for summary judgment on the breach of contract claim will be denied without prejudice, and the Matsuks' Motion for Summary Judgment on the other claims will be granted. An appropriate Order shall issue on this date.

Dated: February 2, 2018

s/ Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE